WILLIAM LOSCH v. ANNA A. PICKETT, *et al.*

1. PARTY, *Bound by His Pleadings.* A party should be bound by the allegations of his pleadings deliberately made, and should not be allowed to obtain benefits from contradictory and inconsistent allegations therein, even if made in separate counts.

2. CIVIL CODE; *Facts to be Pleaded; Contradictory Allegations.* The spirit of our civil code is that a party shall state in his pleadings the real facts of his case, and not falsehoods or fictions. A thing cannot be true and untrue at the same time; and any pleading containing allegations made by the same party both affirming and denying a particular thing carries falsehood upon its face, and in such a case the court may consider as true such of the allegations as are against the pleader.

3. FRAUD; *Statute of Limitations.* A cause of action for relief on the ground of fraud is barred by the two-years statute of limitations contained in § 18, subdivision 3, of the civil code, if the fraud is discovered more than two years before the action is commenced; and *held*, that such statute is applicable to the present case.

4. LEASE; *No Action in Favor of Lessee.* Where a person procures a lease of certain premises for the purpose of carrying on a business in connection with certain supposed mineral wells, and agrees to pay

as rent therefor an amount greatly in excess of the rental value of the premises, and afterward he forfeits his right to the premises by refusing to pay the rent, and the owner of the premises, in accordance with a stipulation in the lease, declares the lease at an end, and the lessee then determines to remove from the premises, and in pursuance thereof removes a portion of his property therefrom, and the lessor then, without the consent of the lessee, removes the remaining portion of the lessee's property therefrom and takes the possession of the premises herself and retains such possession, *held*, that by reason of the acts of the lessor no cause of action has accrued in favor of the lessee.

*Error from Shawnee District Court.*

THE opinion states the nature of the action, and the material facts. Trial at the January Term, 1885, and judgment for defendants. The plaintiff, *Losch*, brings the case to this court.

*Jetmore & Son*, for plaintiff in error.

*Charles M. Foster*, and *Waters & Chase*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: In the court below, as in this court, William Losch was the plaintiff and Anna A. Pickett and William C. Hamilton were the defendants. The case was tried before the court and a jury, and after all the evidence of the plaintiff was introduced the defendants interposed a demurrer thereto, on the ground that it did not prove any cause of action, and the court below sustained the demurrer and rendered judgment in favor of the defendants and against the plaintiff for costs. To reverse this judgment the plaintiff brings the case to this court.

In order to have a proper understanding of the case, it will be necessary to state the substance of both the pleadings and the evidence. The plaintiff's petition contained three counts, and in each count he set forth a separate cause of action. In the first count he alleged a conspiracy and fraud on the part of the defendants in procuring the plaintiff and T. R. Grand-

staff to take an assignment of a lease of lot No. 90 on Harrison street in the city of Topeka, Kansas, which lot contains one or two supposed mineral wells. The lease was for a term of nine years, commencing on February 1, 1881, and running to February 1, 1890, and was executed on January 28, 1881, by the defendant Pickett and her husband to the defendant Hamilton, and was assigned on the same day by Hamilton to the plaintiff Losch and T. R. Grandstaff, and on January 9, 1882, Grandstaff assigned his interest in the lease to the plaintiff. The fraud alleged is that the defendants represented to the plaintiff and Grandstaff that the mineral wells contained great quantities of never-failing mineral water, which were of great value in the cure of sickness and diseases; which representations, it is alleged —

"Were false and fraudulent in this, that the said mineral wells did not possess and contain great, or any, quantities of mineral water as aforesaid, but that the same became, and were at the time of said transfer by defendants to plaintiff, void of water and destitute of mineral and medical properties; all of which facts were to the defendants then and there well known and understood."

In the second count of the plaintiff's petition, it is alleged that —

"The said mineral wells were and are of great value, and possess mineral and medicinal properties, thereby enabling the plaintiff to, and who would be enabled to, make great income, gains and profits from the use, sale and disposition thereof to sick patients and customers, and other persons who would use and patronize the same."

And that on July 10, 1883, the defendants wrongfully rescinded the lease and ejected the plaintiff from the premises, and wrongfully retained a portion of the plaintiff's personal property, attached to the premises.

In the third count of the plaintiff's petition, it is alleged "that the defendants are indebted to the plaintiff in the sum of $5,000, for work and labor," etc., "furnished defendants at their special instance and request."

There are other allegations in the plaintiff's petition, the

material ones of which will be hereafter mentioned in this opinion.

The defendants answered to this petition separately — the defendant Pickett setting forth fifteen separate defenses, and the defendant Hamilton three. Among these defenses are the following: A general denial, the two-years statute of limitation, a defect of parties plaintiff, a misjoinder of causes of action, contradictory and inconsistent allegations in the petition which defeat the first and second supposed causes of action.

The plaintiff, for reply to these answers, set forth that his action was commenced within two years after the discovery of the alleged fraud.

The evidence tends to prove the following facts: The leased premises belonged to Mrs. Pickett. She had, previous to January 28, 1881, leased the same to Hamilton, and his lease had not yet expired. On January 28, 1881, he procured the lease to be extended to February 1, 1890, and paid Mrs. Pickett $100 additional for such extension. Mrs. Pickett, at the time, had notice that he was negotiating with Losch and Grandstaff, and that he expected to transfer the lease to them; but it does not appear that she ever authorized Hamilton or any other person to make false statements to Losch or Grandstaff, or to anyone else. Hamilton, however, did make false statements to Losch and Grandstaff, representing to them that there was an abundance of mineral water in the wells, when, in fact, there was not. Only one of the wells was considered as possessing mineral water, and the water in that well was at that time only such as had been brought from a distance and poured into it. It contained some kind of insects, which Losch, as a witness, called "wiggles," and which his wife, as a witness, called "wiggle-waggles." Of all this the plaintiff and Grandstaff had knowledge prior to the month of May, 1881. Indeed, they had sufficient knowledge of the wells and their condition prior to their purchase of the lease to put them upon inquiry, and they should not have relied upon the statements of Hamilton or Pickett, or any other interested person. The

evidence clearly shows that Losch and his wife knew the condition of the wells in February of that year, and that Grandstaff knew it in March, *and that the water gave out in April of that year*. Grandstaff, finding that the wells were not what they were represented to be, and that they were practically worthless, soon thereafter abandoned them in "disgust," and on June 28, 1882, left the state and went to Colorado, where he still resides. The plaintiff cleaned out the wells, but that did them but little good. In September, 1881, he drilled the mineral well deeper, but even that was of but little benefit to it. On January 9, 1882, Grandstaff assigned his interest in the leased premises to the plaintiff, Losch. On July 1, 1882, the defendant, Mrs. Pickett, reduced the rent from $50 per month to $25 per month, which reduction was to continue for one year and until the last of June, 1883, when she said she would make it favorable to the plaintiff. On July 1, 1883, the defendant, Mrs. Pickett, through her husband and agent, demanded the rent of the plaintiff, Losch, for that month, at the rate of $50 per month, but he refused to pay that amount, and tendered $25. Up to that time the rent had been paid to the satisfaction of Mrs. Pickett. Under the lease the rent was to be paid in advance, and the amount was $50 per month; and for non-payment of the rent it was stipulated in the lease that the defendant, Mrs. Pickett, might "of her own election, distrain for the rent due, or declare this lease at an end, and recover the same as if held by forcible detention; the said party of the second part, (Losch and Grandstaff's assignor, Hamilton,) hereby waiving any notice of such election, or any demand for the possession of said premises." On July 3, 1883, the defendant, Mrs. Pickett, gave notice to the plaintiff that the lease was terminated for the non-payment of rent, and for him to leave the premises. July 8 to 10, 1883, the defendant, Mrs. Pickett, removed the plaintiff's property from the premises, and took the possession of the premises herself, and has remained in the possession thereof ever since. The plaintiff, at the time, contemplated removing from the premises, and had

already removed a portion of his property. He did not reside there, and was not present when Mrs. Pickett removed his property from the premises. There were some other facts shown which we shall mention, if necessary, as we proceed with this opinion.

The first question to be considered in this case is, whether under the first count of the plaintiff's petition any cause of action was proved as against either of the defendants, Mrs. Pickett or William C. Hamilton. In other words, were the following material facts sufficiently made out by the evidence? First, that the alleged representations were made by the defendants, or either of them; second, that they were made in order to influence the plaintiff's conduct; third, that, relying upon them, the plaintiff did enter into the contract and otherwise acted as was desired; fourth, that the representations were untrue; fifth, that the plaintiff suffered damage from the action which he was induced to take; sixth, that this damage followed proximately from the deception; seventh, that the discovery by the plaintiff of the alleged fraud was within two years before this action was commenced. We are inclined to think that the plaintiff failed in several particulars in making out his case as against Mrs. Pickett, and also failed in one or more particulars in making out his case as against Hamilton. The only fraud alleged in the plaintiff's petition is, that the defendants falsely represented to the plaintiff and Grandstaff that the mineral wells contained great quantities of never-failing mineral water, which were of great value in the cure of sickness and diseases; but considering the other allegations of the plaintiff's petition, were not these representations true? And, if they were true, then no cause of action was shown. In the second count of the plaintiff's petition he alleges among other things as follows:

"That the mineral wells were and are of great value, and possessed mineral and medicinal properties, thereby enabling the plaintiff to, and who would be enabled to, make great income, gains and profits from the use, sale and disposition thereof to sick patients and customers, and other persons who would use and patronize the same."

Now if this allegation is true, (and as against the plaintiff the court below had the unquestionable right to assume that it was true,) no cause of action was shown against either of the defendants. A plaintiff should in all cases be bound by his allegations deliberately made; but it may be claimed that in the first count of the plaintiff's petition he alleged directly the reverse of what he stated in the second count. Now this is true; but a party to an action should not be allowed to obtain benefits from contradictory and inconsistent allegations deliberately made by himself in his pleadings. Our civil code does not contemplate any such thing. The spirit of our civil code is, that a party shall state in his pleadings the real facts of his case, and not falsehoods or fictions; and when each party states what he believes to be true and the real facts of his case, the court may know precisely where the parties differ. A thing cannot be true and untrue at the same time; and any pleading containing allegations made by the same party, both affirming and denying a particular thing, carries falsehood upon its face. (*Butler v. Kaulback*, 8 Kas. 668, 671 to 673; *Wright v. Bacheller*, 16 id. 259; *Wiley v. Keokuk*, 6 id. 94, 105.) But, passing over everything else, the plaintiff's cause of action, which is founded upon an alleged fraud, did not accrue within two years before this action was commenced, nor was the alleged fraud discovered within two years before this action was commenced. On the contrary, the cause of action, if it ever existed, accrued, and the fraud, if it ever existed, was discovered, about two and one-half years before this action was commenced. This action was not commenced until August 4, 1883, while the exact condition of the wells was known to the plaintiff and to his partner, Grandstaff, and to the plaintiff's wife, who acted as his agent in carrying on the business, very soon after the time when the lease was transferred from Hamilton to the plaintiff and Grandstaff. Indeed, the evidence tends to show that prior to the transfer of the lease the parties knew that the water contained the insects which in their testimony they

1. Party, bound by his pleadings.

2. Civil code; facts to be pleaded; contradictory allegations.

called "wiggles," or "wiggle-waggles," and in a very few days after the transfer of the lease they knew that the wells were not such as they had been represented to be, and they knew that "the water gave out" in April, 1881. Soon thereafter they cleaned out the mineral well, but that did but little good. All this occurred, and the plaintiff had full knowledge thereof, more than two years before this action was commenced. It is true, the plaintiff did not know until after August 4, 1881, that he might not find plenty of mineral water by drilling the wells deeper; and in that respect he is still ignorant. After August 4, 1881, he drilled the mineral well a few feet deeper, and did not find much water of any kind, and what he found was not good mineral water. But suppose he had drilled the well still deeper, say two, three, or ten feet deeper: does he know that he would not have found plenty of mineral water? Certainly not. But the question as to whether he might not have found mineral water by drilling the well deeper is not a material question in the case. The question is not what the wells might be made to be, but it is what they were in fact at the time of the transfer of the lease from Hamilton to the plaintiff and Grandstaff, and whether they were in fact such as they were represented to be. As to what the wells were in fact, the plaintiff and his wife and his partner, Grandstaff, 3. Fraud; statute well knew long before August 4, 1881. The of limitations. plaintiff's cause of action was therefore barred by the two-years statute of limitations, (Civil Code, § 18, subdiv. 3,) long before this action was commenced.

The next question to be considered is, whether under the second count of the plaintiff's petition any cause of action was proved as against either of the defendants. Now it is not even claimed that any cause of action under the second count was proved as against Hamilton; but the plaintiff still claims that he proved a cause of action under that count against Mrs. Pickett. This alleged cause of action is that the wells were of great value; that the defendants wrongfully ejected the plaintiff from the premises; wrongfully deprived him of the use of the wells; and wrongfully retained a portion of

the plaintiff's personal property which was attached to the premises. Now the evidence shows that the plaintiff did not use the premises as a residence, or for any purpose except in carrying on a business in connection with the mineral wells; that the premises were of no value to him except in such business and in connection with the use of the mineral wells; that the premises were valuable only as the mineral wells made them valuable; that the mineral wells were of but little value; and that the whole premises were not worth near the rent which the plaintiff was under obligation to pay for them under the lease. The plaintiff alleges in the first count of his petition substantially that the mineral wells were worthless. He alleges among other things as follows:

"That the said mineral wells did not possess and contain great or any quantities of mineral water as aforesaid, but that the same became and were at the time of said transfer by defendants to plaintiff void of water and destitute of mineral and medicinal properties; all of which facts were to the defendants then and there well known and understood."

Of course the court below had a right to assume as against the plaintiff that the foregoing allegations are true; and if they are true, then the plaintiff never had any cause of action against the defendants as set forth in the second count of his petition. But, as before stated, the plaintiff's evidence also showed that the mineral wells were comparatively worthless — indeed, worth much less than the rent which he was to pay for the premises. Under the lease he was required to pay $50 per month as the rent for the use of the premises, but the evidence shows that the use of the premises was not worth anywhere near that amount. Hence no damage resulted to the plaintiff by reason of his being ejected from the premises. Also, under the evidence, the plaintiff had forfeited his right to the premises by the failure to pay the rent stipulated for, and the only wrong done by the defendant, Mrs. Pickett, was, not in ejecting him from the premises, but in doing so in an irregular manner. He no longer had any right to remain on the premises. Be-

*4. Lease; no action in favor of lessee.*

sides, the plaintiff was then intending to remove from the premises, and had already removed a portion of his property therefrom. It is also alleged that the defendant wrongfully retained a portion of the plaintiff's personal property attached to the premises; but there was no evidence sustaining this allegation. It is also claimed in the brief of the plaintiff's counsel, that the plaintiff should recover for personal property injured; but there is no allegation in this count of the plaintiff's petition that would authorize a recovery for personal property injured. We think the plaintiff failed to prove any cause of action under the second count of his petition.

The third and last question to be considered is, whether the plaintiff proved any cause of action under the third count of his petition. Now the failure under this count was so complete and absolute that we need not waste words in discussing it. Indeed, we hardly think that the plaintiff claims that he proved any cause of action under this count.

Perceiving no material error in this case, the judgment of the court below will be affirmed.

All the Justices concurring.