**FARMERS' STATE BANK OF ADA v. KEEN et al.**

No. 6577—Opinion Filed Aug. 14, 1917.

(167 Pac. 207.)

**1. Pleading — Intervention — Verification —Waiver.**

If the plaintiff fails to make objection to an unverified plea of intervention before proceeding to trial, either by filing a motion

to strike or in some other proper manner, he is deemed to have waived any objection to the plea on the ground of failure to verify the same.

### 2. Appeal and Error—Objections—Time.

Objections to leading and argumentative questions propounded in the trial of a cause cannot, for the first time, be made in this court.

### 3. Pleading—Answer to Plea of Intervention—Denial.

When an answer to a plea of intervention sets forth a general denial and also affirmative matter, and such affirmative matter amounts substantially to a denial only of the matters set up by the plea of intervention, it is not necessary for the intervener to file denial of such affirmative matter.

### 4. Husband and Wife—Status of Wife—Property and Contracts.

In this state a married woman occupies the same status as her husband with respect to the right to contract, maintain, and defend actions, engage in business, and acquire and convey property. Title to her property is not clouded with any presumption that such property was acquired by the efforts or means of her husband.

### 5. Estoppel — Husband and Wife—Wife's Separate Property — Payment of Husband's Debts—Pleading.

The wife's separate property cannot be subjected to the payment of her husband's debts; but if, with her knowledge and consent, he is permitted to deal with it as his own and obtain credit upon it, such acts on her part amount to an estoppel in pais. For such estoppel to be effective in favor of a creditor of her husband in an action to subject her property to the payment of her husband's debts, the facts showing such estoppel must be specifically pleaded, and must be established by the weight of the evidence.

### 6. Limitation of Actions—Running of Statute—Fraud.

In cases of fraud, the statutes of limitation run only from the time of the discovery of the fraud, or from such time as the defrauded party, with ordinary diligence, might have discovered the fraud.

### 7. Same—Fraud—Discovery—Notice.

When a relation of trust or confidence exists, making it the duty of the defrauder in the trust capacity to disclose the true state of facts, the defrauded party is not charged with constructive discovery of the fraud on account of the facts being a matter of public record.

### 8. Attachment — Judgment — Lien—Legal Title.

A judgment or attachment lien does not reach the mere legal title of property in the debtor, when the equitable title is in another.

### 9. Fraudulent Conveyances — Husband's Gift to Wife—Validity.

At a time when the husband is not indebted, he may make a gift of property to his wife. Such gift is valid, and vests the title to such property in his wife.

### 10. Husband and Wife — Wife's Separate Estate—Husband as Trustee.

When a husband acquires the legal title to land belonging to his wife's separate estate, he is deemed to hold it in trust for her benefit, in the absence of direct evidence that she intended to make a gift of the property to him.

### 11. Fraudulent Conveyances — Husband's Conveyance to Wife—Validity.

When irreconcilable differences arise between the husband and wife, a conveyance by him of property to her for the protection and support of herself and their children, in consideration of articles or separation, is valid. and vests title in her as against creditors of the husband not holding a lien against such property.

(Syllabus by Stewart, C.)

Error from District Court, Pontotoc County; Tom D. McKeown, Judge.

Consolidated actions by the Farmers' State Bank of Ada, Okla., against G. H. Keen, in which Sadie E. Keen is intervener. Judgment for intervener, and plaintiff brings error. Affirmed.

C. F. Green, for plaintiff in error.

J. F. McKeel, for defendant in error Sadie E. Keen.

Opinion by STEWART, C. Plaintiff, Farers'. State Bank of Ada, sought to sell under execution as the property of G. H. Keen certain lots in the city of Ada claimed by the intervener, Sadie E. Keen. In another action plaintiff sought to take such property in attachment to satisfy another claim upon which suit was brought against G. H. Keen. By agreement of parties the actions were consolidated, and the issues were tried between the plaintiff and the intervener as to the title of the property, resulting in a verdict of the jury and judgment of the court in favor of the intervener for the title and possession of the property. From such judgment of the court the plaintiff duly appeals.

The plaintiff urges as one of the reasons why the intervener should not recover that the plea of intervention in the attachment proceedings was not verified as required by statute. On an examination of the record we find that the plaintiff made no objection to the plea of intervention for the reason that the same was not verified; that no motion to strike was made, and no exceptions

were preserved, to be considered by this court; hence the plaintiff cannot avail itself of this objection. Doughty v. Funk, 24 Okla. 312, 103 Pac. 634.

The plaintiff also asks for reversal because of certain testimony elicited from the intervener by leading and argumentative questions on the part of her counsel; the plaintiff in its brief admits that no objection was made to this testimony. It is now too late to urge the admission of such testimony as error. On examination of the testimony, however, we do not find that the same was prejudicial, and we are of the opinion that the judgment of the court would have been the same, irrespective of the admission of such testimony.

It is further contended by the plaintiff that the response of the plaintiff to the plea of intervention was not denied by any pleading filed by the intervener, and for such reason, under our statutes, every material allegation of new matter in the response should have been, for the purpose of the action, taken as true. We have examined the response and the pleas of intervention, and find that the intervener fully sets up her claim of title; that the response in legal effect amounts to no more than a general denial on the part of the plaintiff. There are no material allegations of new matter set forth in such response, which were not placed in issue by the plea of intervention and the general denial contained in the response; hence this contention of the plaintiff in our opinion is without merit.

The undisputed evidence in this case shows that G. H. Keen and the intervener had been husband and wife; that shortly after their marriage, and in November, 1907, a farm was purchased by the intervener; that she furnished about $275 of the money, being money given to her by her father; that, as a gift, her husband furnished the remainder of the money to purchase the farm, the same being conveyed to the intervener; that on September 14, 1909, the farm in question was traded by her husband for the lots in the city of Ada involved in this suit and for other property; that, without the knowledge or consent of the intervener, her husband took the deed to the lots in his own name; that in 1911 domestic trouble arose between G. H. Keen and the intervener; that their differences were irreconcilable, and that the intervener and her husband agreed to separate; that on May 11, 1911, she first discovered that the lots in question had been conveyed to her husband, instead of to herself, and on such day her husband made and executed a conveyance of

the lots to her which deed was duly recorded; that such deed recites as a consideration "articles of separation and $1, cash in hand paid." The testimony of the intervener, which is not disputed by the evidence, is to the effect that the real consideration was the fact that her property had been traded for the lots, and that it was her desire and that of her husband to vest in her the legal title of the property which equitably belonged to her, and further that, her husband and she having agreed to separate, he desired to be relieved from further pecuniary obligations to her, and she agreed to sign articles of separation, which were not executed at the time, but afterwards were duly signed by her. It further appears from the evidence that the plaintiff on the 8th day of February, 1912, obtained a judgment against G. H. Keen, and certain property of G. H. Keen was sold under execution and applied on such judgment; that in February, 1913, an alias execution was issued in such case, and the lots were advertised to be sold under such execution as the property of G. H. Keen, in which proceeding the intervener appeared and filed her plea. It further appears that the intervener built a house upon the lots in question out of her own funds, and that in February, 1912, she moved with her two minor children into the house on such lots. The plaintiff on the 15th day of January, 1913, filed another suit against G. H. Keen for the sum of $57, and sought to take the same property in attachment on the ground that G. H. Keen was a nonresident of the state. In this proceeding Sadie E. Keen also intervened, and, as before stated, the two actions were consolidated by agreement.

The plaintiff urges several legal propositions in support of the assignment of error that the verdict is not supported by the evidence and is contrary to law. A number of authorities are cited to sustain the proposition that, when a married woman purchases property, the presumption is that it was paid for with funds of her husband, and that one who would establish title in a married woman has the burden of proving that the means were not furnished by her husband. We do not find that such authorities support the proposition made by plaintiff, especially in view of the statutes of our state which accord to a married woman the same legal status and the same freedom of contract enjoyed by the husband. In this state the husband and wife are authorized to enter into engagements and contracts with each other, and the wife may convey her own property without the consent of her

husband; she has the right to engage in business for herself, and to maintain and defend actions without joining her husband; her separate property is not liable for the debts of her husband, and it is provided by section 3363, Rev. Laws 1910, that:

"Woman shall retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of all her rights as a woman, which her husband does as a man."

It would place an unusual hardship upon a married woman to permit her to engage in business, acquire property for herself, and dispose of same, and at the same time have her property interests clouded by the presumption that the same were acquired with money of her husband, thus impeding transfers of the property and subjecting her to harassing litigation, handicapped by burdens in establishing her title not imposed upon others. But assuming that the contention of plaintiff is correct, we are inclined to believe from the evidence in this case that the intervener has overcome such presumption by the weight of the evidence.

It is next urged by plaintiff that the wife's separate property may become subject to the debts of her husband, in case he is permitted to deal with it as his own and obtain credit upon it, with her knowledge and consent. This is unquestionably a correct statement of the law, but in our opinion does not apply to the pleadings nor to the facts in this case. The authority cited by plaintiff on this proposition, to wit, De Votie et al. v. McGerr, 15 Colo. 467, 24 Pac. 923, 22 Am. St. Rep. 426, supports the proposition of law announced, but in the opinion it is further stated:

"An estoppel in pais cannot be proved under the general or specific denial provided by the Code, but must be specially pleaded as new matter, in order to be available as a defense."

That an estoppel in pais must be specially pleaded and proven is in accord with the general current of authorities in Code states, and is supported by the following authorities: Wait on Fraudulent Conveyances (3d Ed.) p. 534; 8 Pl. & Pr. p. 11; 4 Am. & Eng. 267. And such is the uniform holding of this court, as shown by the following cases: Nance v. Okla. Fire Ins. Co., 31 Okla. 208, 120 Pac. 948, 38 L. R. A. (N. S.) 426; Sapulpa v. Sapulpa Oil & Gas Co., 22 Okla. 347, 97 Pac. 1007; Blakemore v. Johnson, 24 Okla. 544, 103 Pac. 554; American Jobbing Ass'n v. James, 24 Okla. 460, 103 Pac. 670; Holt v. Holt, 23 Okla. 639, 102 Pac. 187; Cooper v. Flesner, 24 Okla. 47, 103 Pac.

1016, 23 L. R. A. (N. S.) 1180, 20 Ann. Cas. 29; Deming Inv. Co. v. Shawnee Fire Ins. Co., 16 Okla. 1, 83 Pac. 918, 4 L. R. A. (N. S.) 607; Tonkawa Milling Co. v. Tonkawa, 15 Okla. 672, 83 Pac. 915. There is nothing either in the pleadings or the testimony in this case to show that G. H. Keen obtained any credit from the bank or any one else upon the property in question, nor does it appear that the intervener permitted him to hold out such property as his in order to obtain credit.

The plaintiff quotes from decisions of this court construing our statute requiring an action on the ground of fraud to be brought within two years from the discovery of fraud, and contends that the record shows that the title to the lots in question were in Mr. Keen, and that defendant is charged with constructive notice from the date of the record of such deed. We do not understand that an action has been brought by the intervener on the ground of fraud. She did not sue to cancel any deed or instrument on such ground. We suggest that in less than two years before the recording of the deed to Mr. Keen embracing the lots involved he conveyed the lots to the intervener, thus rendering unnecessary the bringing of an action on her part.

Since the plaintiff has raised this question, we deem it proper to distinguish the authorities cited by the plaintiff. Generally speaking, when a fraudulent transaction is a matter of public record, so that a party interested has abundant means of finding out the facts of such record, he is charged with notice of the record facts; and, though he may not have actual notice, he is held to have constructively discovered the acts constituting the fraud. However, a different rule prevails when a relation of trust and confidence exists. The rule, correctly stated, is that in case of fraud the statutes of limitation begin to run only from the time of the discovery of the fraud, or from such time as the defrauded party, with ordinary diligence, might have discovered the fraud. If one acts as agent for another in a transaction, ordinary diligence does not require that public records be searched in order to find out whether or not the trust relationship was abused. The principal in such case has a right to rely upon the fidelity of the agent, and the agent is charged with the duty of revealing the facts to the principal. It is especially true that one spouse may and should confide in the other, and it is not reasonable to charge the wife with notice of public records in transactions in which the husband acts as her agent. In Vigus v.

O'Bannon, 118 Ill. 334, 8 N. E. 778, it is said:

"But this failure to use diligence will be excused where a relation of trust or confidence existed, making it the duty of the defrauder in the trust capacity to disclose the true state of facts, and the defrauded party, confiding in such duty, was prevented from discovering it."

It is said by Chief Justice Horton in Duffitt v. Tuban, 28 Kan. 293 (208):

"In a case like this, the statute does not begin to run until the fraud is discovered. For this purpose there is no constructive discovery. If an agent or tenant should fraudulently allow the lands of his principal or landlord to be sold for taxes, and take the deed himself and put it on record, this would not be notice to the principal or landlord that would set running the statute that would bar him from an action for relief against the fraud."

See, also, McMahon v. McGraw, 26 Wis. 622; Duff v. Duff, 71 Cal. 513, 12 Pac. 570; Bradford v. McCormick, 71 Iowa, 129, 32 N. W. 93; Losch v. Pickett, 36 Kan. 216, 12 Pac. 822.

It is well settled in this state that the lien of a judgment does not attach to the mere legal title to land, when the equitable estate is in another, and that an attachment or a judgment lien reaches only the interest of the judgment debtor in real estate. Gilbreath et al. v. Smith, 50 Okla. 42, 150 Pac. 719; Scott-Baldwin & Co. v. McAdams, 43 Okla. 161, 141 Pac. 770; Lunn v. Kellison, 66 Okla. —, 153 Pac. 1136; J. I. Case Threshing Mach. Co. v. Walton Trust Co. et al., 39 Okla. 749, 136 Pac. 769. Hence in this case it must follow that, irrespective of the deed made by G. H. Keen to the intervener, if the evidence shows that the actual title at all times since making the deed to G. H. Keen was in the intervener, the lots cannot be reached either by execution or by attachment as the property of G. H. Keen.

The plaintiff admits that the intervener has a $275 interest in the lots, being the $275 which the testimony shows she originally furnished to buy the farm conveyed to her, in exchange for which the title to the lots in question was acquired; and the plaintiff offers to pay to the intervener this sum of money on the condition that, after payment of same, the lots be subjected to payment of its claims. Unquestionably, the intervener only furnished $275 at the time the farm was purchased; but the undisputed testimony is that her husband made her a gift of the additional amount necessary to purchase the farm. It does not ap-

pear that her husband at that time was indebted to any one, and, there being no evidence that he was so indebted, we must conclude that he had a right at that time to make a gift to his wife or to any one else, and that the intervener acquired both the legal and equitable title to the farm. The farm being her property and traded for the lots involved, the deed to the lots being taken in the name of her husband without her knowledge or consent, she became the equitable owner of the lots.

At page 536, Wait on Fraudulent Conveyances, the author says:

"Whenever a husband acquires possession of the separate property of his wife, whether with or without her consent, he must be deemed to hold it in trust for her benefit, in the absence of any direct evidence that she intended to make a gift of it to him."

Section 6660, Rev. Laws 1910, reads:

"When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

The law of this state as to resulting trusts is admirably expounded in the well considered opinion of Chief Justice Sharp in J. I. Case Threshing Mach. Co. v. Walton Trust Co. et al., supra. In that case the court holds:

"Resulting trusts are not within the statute of frauds, and may therefore be established by parol evidence, when not otherwise incompetent."

See, also, McCoy v. McCoy, 30 Okla. 380, 121 Pac. 176, Ann. Cas. 1913C, 146, an able opinion by Commissioner Harrison.

In Brisco et al. v. Norris et al., 112 N. C. 671, 16 S. E. 850, the creditors of the husband sought to set aside a deed made by him to his wife, and it appeared that the deed was executed after the maturity of the husband's obligation and recorded immediately after the attorneys for the creditors had been urging payment of the debt. The jury found that the land conveyed was purchased with the wife's separate estate and that the legal title was placed in her husband by her consent, with an agreement that he would convey the land to her when requested. It was held that it was immaterial with what intent the deed was made to the husband and by him to the wife. The court in its opinion said:

"Upon this state of facts, the husband held the land as trustee for the wife (Lyon v. Akin, 78 N. C. 258; Kirkpatrick v. Holmes,

108 N. C. 206, 12 S. E. 1037, and her rights in it were in effect the same before the execution of the deed, which is alleged to have been made with fraudulent intent, as they were after its execution and delivery. Its effect was merely to vest in her the legal title to the land of which she was before the equitabe owner, her title being such as to enable her, upon the strength of it, to recover the land from her husband, or from any one purchasing of him with notice of her rights (Lyon v. Akin, supra), or from anyone who had bought the land at a sale under execution against her husband; for such purchaser would acquire only such title as the husband had. Hence, these facts being established, it became immaterial to inquire with what intent the deed was made and accepted, for the substantial rights of none of the parties have been changed thereby."

We are of the opinion that the articles of separation constitute a valid consideration, even as against creditors. In Pippin v. Tapia et al., 148 Ala. 353, 42 South. 545, the question arose as to whether a deed made by the husband to the wife was voluntary as to creditors. The court in the syllabus uses this language:

"Where a wife, having commenced divorce proceedings against her husband and obtained an injunction against his disposing of his property, enters into a contract with him whereby he agrees to cease drinking and to properly support her, and to execute to her a deed to be placed in escrow, to be delivered to her on his breaking his agreement, she agreeing to continue her suit and live with him, such deed is not voluntary to any extent, as regards the question of fraudulent conveyance, though the property conveyed was worth more than she could have recovered as alimony."

For a long time it was the holding of the English courts that, the separation of husband and wife being against public policy, a conveyance of property in consideration of articles of separation was void. It was also a theory of the ancient common law that the being of the wife was absorbed in that of her husband, and therefore the wife and husband could not contract with each other. But as domestic troubles continuously recurred, in which it was necessary to take cognizance of actual conditions and circumstances arising from separation of husband and wife, rather than of idealistic theories, correct ethically and morally, but sometimes impracticable of application, it became the custom of husbands separating from their wives to place the legal title of property in trustees for the use and benefit of their wives, and such conveyances were upheld by the courts. The modern policy is well expressed in the language of Mr. Schouler on page 330 of his work on Domestic Relations:

"Inasmuch, then, as separation deeds are not enforced either in England or the United States, at the present day, without regard to the policy of stipulations or covenants in question, the limit of judicial support may be drawn at the support of provisions which, supposing separation inevitable, carry the fulfillment of conjugal duties and rights after a reasonable and becoming manner into that relation. For equity can only sanction what is fair and beneficial; and here cognizance is taken, not of the separation, but of circumstances and a settlement attending that state."

As, under our statutes, the husband and wife may contract with each other, the intervention of trustees is not necessary in cases of separation. Section 3354, Rev. Laws 1910, provides that, while the husband and wife cannot by contract alter their legal relations except as to property, they may agree in writing to an immediate separation and make provisions for the support of either and their children during the separation. Section 3355, Rev. Laws 1910, reads:

"The mutual consent of the parties is a sufficient consideration for such an agreement as is mentioned in the last section."

We do not hold that the statutes to which reference is made or the judicial trend encourages separations between husband and wife. Existing marital relations cannot be altered by contract; but, in view of the fact that such separations inevitably take place, the statute is meant to give legal effect to necessary agreements for the protection of each spouse, and to define and enforce the duties of one toward the other—not to legalize the separation itself, but to meet the attendant condition. In executing such a contract, it is assumed that a breach of conjugal relations exists, and that, in effect, a separation has already happened.

On either theory of consideration presented, we think the deed from Keen to his wife must be upheld, and that, after the execution of such deed, she had both the legal and equitable title to the lots involved. Even if no deed had been made by Keen to the intervener, she would have the equitable title, and the property could not be taken for her husband's debts.

The judgment of the trial court is affirmed.

By the Court: It is so ordered.