## COONS v. COONS et al.

No. 17647. Opinion Filed Nov. 8, 1927.

Rehearing Denied Dec. 20, 1927.

(Syllabus.)

1. **Appeal and Error—Necessity for Exceptions—Incompetent Evidence.**

The admission of incompetent evidence and evidence from an incompetent witness under section 588, C. O. S. 1921, in the absence of timely objections and exceptions to the ruling of the court, does not present error, and will not be considered on appeal.

2. **Deeds—Conveyance by Wife to Husband—Presumption Against Validity.**

Where a wife deeds her separate land to her husband during the existence of the confidential relation of husband and wife, and said conveyance is later attacked by the wife in a suit against the administrator of her deceased husband's estate and his heirs, on the grounds of coercion and undue influence, equity raises a presumption against the validity of such conveyance, and casts upon the party asserting its validity the burden of proving affirmatively good faith, fair dealing, and a valid consideration.

**3. |Same—Action by Wife Against Husband's Administrator and Heirs to Cancel Deed—Judgment for Plaintiff Sustained.**

Record examined, and held, that the defendant failed to overcome the presumption against the validity of said conveyance, and failed to sustain the burden imposed upon him; and that the judgment is not against the clear weight of the evidence.

Commissioners' Opinion, Division No. 2.

Error from District Court, Pawnee County; Edwin R. McNeill, Judge.

Action by Gertie Coons against William Silas Coons, a minor, and C. C. Roberts, administrator of the estate of Arthur Coons, deceased, to cancel deed of conveyance and to have a certain fund declared a trust fund. Judgment for plaintiff, and defendant William Silas Coons appeals. Affirmed.

Clark & Clark, for plaintiff in error.

Thurman S. Hurst, for defendants in error.

JEFFREY, C. This was an action by Gertie Coons, plaintiff, against William Silas Coons, a minor, and C. C. Roberts, as administrator of the estate of Arthur Coons, deceased. The petition alleged that Gertie Coons was the widow of Arthur Coons, deceased; that William Silas Coons was the son of Arthur Coons by a former marriage: that Gertie Coons was a full-blood Pawnee Indian and Arthur Coons was a one-half blood Pawnee Indian. The petition further alleged that during the married life of Arthur Coons and plaintiff, the said Arthur Coons, having had considerable business experience, was the business agent and advisor of plaintiff, and that plaintiff confided in her husband and solely depended upon him to transact her business, to take care of and use her income, and attend to all matters pertaining to her estate. The petition alleged that for some months prior to June 18, 1925, Arthur Coons was in ill health and suffering with some sort of mental disease; that during said time he made frequent threats to take the life of plaintiff and himself; and that plaintiff entertained great fear of her husband's committing some violent act should she antagonize him: and that by reason thereof she complied with every request made by him; that on June 18, 1925, at the request of Arthur Coons, and by reason of her fear of the consequences should she disobey him, she conveyed by warranty deed, 160 acres of land, the same being her Indian allotment, to the said Arthur Coons. Plaintiff prayed that

said deed be canceled, and the title to said land quieted in her, and that the sum of $1,152.26 on deposit in the First National Bank of Pawnee to the credit of Arthur Coons at the time of his death, the same being the balance of proceeds of a loan on said land, be impressed with a trust in her favor.

A guardian ad litem was appointed for William Silas Coons, and said guardian ad litem filed a general denial to said petition, and alleged that plaintiff and Arthur Coons were divorced on the 17th day of April, 1925, and that shortly thereafter they entered into a contract, whereby plaintiff would convey to Arthur Coons the land in question if he would take her back as his wife; that in consideration of plaintiff's promise to convey said land to Arthur Coons, he took her back, and they were married on May 16, 1925; and that plaintiff made said conveyance on June 18th, in compliance with said agreement.

The cause was tried to the court, and the issues were found in favor of plaintiff, and judgment rendered canceling said deed, quieting title in plaintiff and impressing the deposit of $1,152.26 to the credit of Arthur Coons in the First National Bank at his death with a trust in favor of plaintiff. From said judgment and the overruling of the motion for new trial, William Silas Coons, herein called defendant, by his guardian ad litem, has appealed. Defendant does not set forth in his brief the specifications of error upon which he relies for a reversal of the judgment in the lower court, but we gather from his argument that he relies on the admission of incompetent, irrelevant and immaterial testimony; and that the findings and judgment of the trial court are not sustained by sufficient evidence and are against the weight of the evidence. These two specifications of error will be discussed in the order herein named.

At the trial of the cause plaintiff testified in her own behalf, and certain questions were asked as to conversations and transactions had personally with Arthur Coons, d ceased. To some of these questions the defendant by his guardian ad litem duly objected, for the reason that the same were incompetent under section 588, C. O. S. 1921. This section of the statute really goes to the competency of the witness and not the character of the evidence. We have examined carefully the testimony of plaintiff, and in each instance where objection was raised because of an attempt to give testimony in respect of any transaction or com-

munication had personally with Arthur Coons, the objection was sustained by the court. In a few instances, testimony was given by plaintiff which perhaps should have been excluded under this section of the statute had timely objections been made thereto. The well-established rule in this jurisdiction is that objection to incompetent evidence must be timely made and exceptions saved, and if such is not done, no error can be predicated upon the admission of testimony although under the rules of evidence the same may be incompetent. The rule is no different with reference to the competence of a witness to give certain testimony under section 588, supra. The admission of incompetent evidence, in the absence of timely objections and exceptions to the ruling of the court, does not present error, and will not be considered on appeal. Scanlan v. Barkley, 72 Okla. 86, 178 Pac. 674; Bichoff v. Russell, 46 Okla. 512, 149 Pac. 146. Where evidence is introduced to which no objection is made and no motion is made to strike it out, acquiescence in its introduction will be presumed. The rule is a sane one. Very frequently in the trial of cases, counsel by consent of opposing counsel is permitted to offer secondary evidence and evidence otherwise objectionable in order to save time and avoid inconvenience in the trial of the cause. When counsel for plaintiff offered evidence of this character by plaintiff herself, and no objection was made, he was entitled to consider any objection which might have been made by opposing counsel as waived, and that the evidence was competent for whatever purpose it was offered. Had objections been made at the time the evidence was offered, counsel for plaintiff might have been able to supply the evidence from other sources. To now permit defendant to urge his objection to the admission of this evidence given by plaintiff would be permitting him to take advantage of his own negligence to the injury of plaintiff.

In a proceeding in equity on appeal, the Supreme Court will examine and weigh the evidence, but the judgment of the trial court will not be disturbed where it is not clearly against the weight of the evidence. Plaintiff's evidence discloses the following facts: That she and Arthur Coons were first married on the 24th day of July, 1915; that they were divorced April 17, 1925, at which time the court, pursuant to a stipulation between the parties, awarded plaintiff $2,000 against her husband, which was found to be the amount of money belonging to plaintiff, and which had been used by her husband in improving his separate estate. Within about four days after the divorce was granted, Arthur Coons sought out plaintiff and asked her to come back and live with him, saying in substance that he was sick and lonesome. They resumed living together at that time, and were remarried on May 16, 1925. On June 18, 1925, plaintiff deeded her allotment, consisting of 160 acres of land, to her husband. Immediately after they resumed living together, plaintiff paid her husband $1,111.40, being the balance on hand of the $2,000 paid her pursuant to the decree of divorce. The evidence further shows that out of $2,000 paid plaintiff by her husband, she paid $705.45 to satisfy a mortgage against the land in question which was given for the family use and benefit. The evidence further shows that during their entire married life, plaintiff solely relied on her husband to manage her business affairs, including the leasing and selling of her real estate. From the time that plaintiff and her husband were divorced, he was sick most of the time and seemed to have been afflicted with some character of mental disease. One of the physicians at that time stated that he had sarcoma of the brain. The evidence shows that he had crying spells, and concealed guns about his premises, and frequently threatened to kill himself and some-one else; that plaintiff did everything she could to humor and encourage him, and guarded against doing anything that might antagonize him for fear that he might carry his threats into execution; and that on September 17, 1925, Arthur Coons did take his own life. The evidence further shows that his brother, Harry Coons, who lived near plaintiff and her husband, had great influence over Arthur, and was frequently called in to quiet Arthur when he had one of his spells. On the 18th day of June, 1925, plaintiff, Arthur Coons, and Harry Coons drove to Pawnee and went to the law office of T. S. Hurst, who, the evidence shows, had performed legal service for plaintiff on at least one other occasion; that the party asked for Mr. Hurst and was informed that he was out of town and would not return until the next day; that Arthur Coons and Harry Coons, at the suggestion of a stenographer in the office, had another lawyer by the name of C. E. Mitchell called in, and they told him that plaintiff desired to make a deed to Arthur Coons. The evidence shows that while plaintiff did not seriously protest the making of the deed at that time, she

did say that she preferred to wait and see Mr. Hurst about it, and showed reluctancy in going ahead, with the transaction. She testified at the time of the trial that she wanted to comply with her husband's request, but wanted to consult her attorney to see if the conveyance could be made (without divesting herself absolutely of the title to the land. Arthur Coons and Harry Coons, insisted that the deed be prepared and executed on that day, which was done. Harry Coons showed considerable interest in the transaction, and according to the testimony of Mr. Mitchell asked if it would be advisable for plaintiff to make the deed to him, and he in turn convey to Arthur Coons. Plaintiff testified that her husband requested that she transfer the land to him, and that Harry Coons advised her that it was the thing to do, and that some day his wife was going to do the same thing. When asked why she made the deed she answered:

"Well, I did that just to put Arthur— satisfy him, because I wanted him to feel that I wanted him to get well, and I did everything to satisfy him."

On behalf of defendant, evidence was offered tending to show that plaintiff conveyed the land in consideration of her husband's taking her back as his wife. Mrs. Harry Coons testified that, on the night of May 15th, plaintiff told her that she was going to deed her land to Arthur as a consideration for his remarrying her, and Harry Coons testified that on the morning of June 18th, while on their way to Pawnee, the following conversation was had:

"Arthur turned around, that is, to Gertie, as she was sitting in the back seat, and he said to her in this way, he says, 'Gertie, this is the land that you said you were going to give me if I took you back.' And she said, 'Yes,' and he further said, 'And that you said you were going to give it to me today, didn't you?' And she said, 'Yes.' Then he turned around to me and he said, 'Harry, you heard what Gertie has said.' And I said, 'Yes.' I says, 'I heard what she said'. I says, 'Well, that is good, if she is willing to give you that land, that is all right.' Then he went on and stated, he said this, he says, 'Well,' he says, 'We are not going to mention it in the deed that she is giving me this land. because I am taking her back, for the simple reason that people would make fun of us, they would make fun of her for giving me this land for me to take her back, and that they would make fun of me for marrying her for taking her back and giving me this land.' "

On cross-examination plaintiff was asked if she and Arthur Coons discussed the deed-

ing of this land prior to their second marriage and she answered as follows:

"No, sir; if he had I would have done it before we got married, because he made me do everything that he wanted me to do, and I think I would have done it before he married me, if that was anything like that."

The evidence shows that in August following the date of the deed, Arthur Coons borrowed $1,500, and he and plaintiff gave a mortgage on the land in question as security for the loan. When Arthur Coons died, he had remaining to his credit a balance of this loan, the sum of $1,152.26, and the court found that this sum was being held in trust for plaintiff, and ordered it applied on said indebtedness.

We think the whole of the evidence shows quite clearly that the confidential relation of husband and wife was the controlling influence that caused plaintiff to execute the deed in question. In addition to the confidence which plaintiff had in her husband's business ability, the evidence shows that she entertained, at least, great anxiety for her husband's health, and was willing to go to any extent in order that he might recover. The evidence shows that plaintiff appreciated her husband's mental condition, and the importance of pleasing him and showing her loyalty toward him. The evidence shows quite clearly that she had no intention, even in the light of these facts, to divest herself absolutely of the title to her land. It has been many times said that the law looks with a jealous and watchful eye on contracts between the husband and wife, and guards with great care the rights of the weaker, and whenever one of the parties obtains a benefit from a mutual transaction, equity raises a presumption against its validity and casts upon the party asserting it the burden of proving affirmatively a compliance with all the requirements imposed by equity, among which are good faith. fair dealing, and a valid consideration. Peeviehouse v. Peeviehouse. 104 Okla. 10. 230 Pac. 255; Holt v. Holt. 23 Okla. 639. 102 Pac. 187; Weitz v. Moulden, 109 Okla. 119, 234 Pac. 583; Tolon v. Johnson. 104 Okla. 201. 230 Pac. 865; Farmers State Bank of Ada v. Keen, 66 Okla. 62. 167 Pac. 207; Flowers v. Flowers, 94 Okla. 134. 221 Pac. 483: Yordi v. Yordi (Cal.) 91 Pac. 348. From the record in this case. it cannot be said that defendant overcame the burden imposed upon him by law, as to any of these requirements.

Regardless of the intent and design on the part of Arthur Coons, shown by the evidence to be somewhat cunning, we are forced

to the conclusion that plaintiff, in making the conveyance in question, was not prompted by such motives as result in a free and voluntary choice. On the contrary, it is quite apparent that she had no other choice in the matter if she enjoyed the peace, harmony and confidence much desired in the marriage union.

We are of the opinion that the judgment of the trial court is not against the clear weight of the evidence, and it is therefore affirmed.

BENNETT, HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.