Ida B. MARSHALL, H. G. Marshall, and H. G. Marshall, Inc., Plaintiffs in Error,

v.

H. D. AMOS, Sinclair Oil & Gas Company and Sinclair Crude Oil Company, as successor in interest to Sinclair Oil & Gas Company, Defendants in Error.

No. 36936.

Supreme Court of Oklahoma.

June 5, 1956.

Rehearing Denied July 17, 1956.

Application for Leave to File Second Petition for Rehearing Denied Sept. 11, 1956.

Luttrell & Luttrell, Norman, for plaintiffs in error.

Brown & Verity, by Paul Brown, Oklahoma City, T. R. Benedum, Norman, for defendant in error H. D. Amos.

HALLEY, Justice.

H. D. Amos filed this action in the District Court of Cleveland County, Oklahoma, March 13, 1953, against Ida B. Marshall, H. G. Marshall, her husband, H. G. Marshall, Inc., Titus Haffa, Ethel Haffa and A & P Development Company, a co-partnership and Sinclair Oil & Gas Company, as defendants. H. D. Amos prayed for judgment that Ida B. Marshall held title as trustee for his use and benefit to an undivided one-half of one-eighth of eight-eighths overriding royalty in an oil and gas lease covering the Southeast Quarter of Section 29–10–2, Cleveland County, Oklahoma.

The Sinclair Oil & Gas Company was made a party defendant only because it was purchasing the oil produced from the lease mentioned and plaintiff sought to have the oil runs impounded pending this action. During the pendency of the action Sinclair Crude Oil Company became the successor to the Sinclair Oil and Gas Company and they were merely stake-holders as to the portion of the oil runs here involved.

At the conclusion of plaintiff's evidence, the court sustained a demurrer to the evidence as to Titus Haffa and A & P Development Company, a co-partnership and

dismissed the action as to these defendants. The judgment dismissing the action as to them was not appealed from and became final.

December 6, 1954, the court adopted findings of fact in favor of the plaintiff and rendered judgment in his favor holding that Ida B. Marshall held title to one-half of one-eighth of eight-eighths overriding royalty interest as constructive trustee for the plaintiff, H. D. Amos, allowing one-half of the proceeds accruing from the sale of production from such overriding royalty interest to the date of judgment.

Ida B. Marshall, H. G. Marshall, and H. G. Marshall, Inc., have appealed. Before rendering judgment the court made extensive findings of fact and conclusions of law. It found that fraud had been practiced upon H. D. Amos by H. G. Marshall and his wife, Ida B. Marshall, whereby Amos had been deprived of an interest in the overriding royalty standing in the name of Ida B. Marshall and ordered them to convey such interest to H. D. Amos and also to account to him for one-half of all sums received from such overriding royalty interest.

A clear understanding of the issues involved require a recital of the events leading up to the filing of this action. The evidence shows that H. D. Amos first learned of the 160 acres of land above described in the early part of 1950, through a seismograph employee who told him it would be a good place to buy royalty. Amos went to Norman, checked the records and found that the royalty under the tract was divided into so many small units and selling at such high prices that he gave up the idea of buying royalty. He then learned that S. C. Yingling and associates, Fred Capshaw, E. W. Godwin and A. B. Soper held oil and gas leases from a few of the royalty owners. The four associates named will be referred to hereafter as Soper and associates.

Amos and H. G. Marshall had known each other for a few years and had business dealings together and each was interested in some phase of the oil and gas business. Amos met Marshall in August, 1950, and Marshall told him that he was looking for a lease that would probably produce from the Wilcox Sand. Amos did not mention the land here involved but contacted Soper and associates and learned that their leases covering this land were for sale. Marshall again asked Amos if he had located a lease that had Wilcox Sand prospects and he told him that he had.

Later Amos and Marshall went to the office of Soper and associates and on September 5, 1950, discussed buying their leases. Marshall said that he had a friend of means in Chicago to whom he thought he could sell the leases.

Capshaw gave them a letter dated September 5, 1950, whereby it was agreed to sell to H. G. Marshall 116 acres of leases at a price of $23,200, provided they could secure a buyer at that price by September 12, 1950, and also reserving to Soper and associates one-sixteenth of seven-eighths overriding royalty. On the same date they gave H. G. Marshall, a second letter whereby they agreed to pay $12.50 per acre if the option to buy as set out in the first letter was consummated by September 12, 1950, as compensation .for his services in securing a buyer for the leases.

Amos and Marshall then went to Chicago and contacted Titus Haffa with whom Marshall had made previous oil and gas deals, and Haffa operated in Oklahoma as A & P Development Company. Only Marshall talked to Haffa, who agreed to buy the leases on the entire 160 acres at $300 per acre plus an override of one-eighth of eight-eighths royalty. Haffa gave Marshall a check for $48,000 and authorized his attorney in Oklahoma City to prepare an escrow agreement which was dated September 14, 1950, whereby the cash was deposited in escrow in the Liberty National Bank and to be paid when and if titles were approved by Haffa's attorney in Oklahoma City, and conditioned that not less

than 145 acres of leases were to be obtained and approved as to title by Haffa's attorney. This letter recited that it superseded the above letter of September 5, 1950, and set a time limit of September 25, 1950.

Soper and associates were unable to meet title requirements on 145 acres of leases by September 25, 1950, and no cash was released by the escrow holder. Soper and associates contended that the titles were good but Haffa's attorney refused to approve the titles.

When it appeared that the deal to sell to A & P Development Company could not be consummated, Haffa came to Oklahoma City in October, 1950, and contacted Marshall and Soper and associates and demanded that his money in escrow be released and appeared anxious to avoid litigation. He had received reports that an offset well had failed to produce from the Wilcox Sand.

Soper and associates had good leases on a few acres above 116 acres but apparently did not have leases on 145 acres that Haffa's attorney would approve. Soper and associates finally agreed on October 18, 1950, to accept $15,500.00 for such leases as they had and retain an override of one-sixteenth of seven-eighths royalty in lieu of one-eighth of eight-eighths and also agreed to secure leases on additional acreage to be paid for out of the escrow money of Haffa when the leases were obtained and titles approved by Haffa's attorney.

Amos had no part in this agreed settlement and knew nothing of it until some days later. Before Haffa entered into the settlement of October 18, 1950, he required Marshall to execute a release of any claim he had to a commission and gave Marshall the sum of $1000.00 to cover expenses but this release excepted any interest that Marshall might have in the overriding royalty which will be discussed later.

By an assignment dated January 2, 1952, Titus Haffa conveyed to Ida B. Marshall an overriding royalty of one-eighth of eight-eighths in the leases accepted by him October 18, 1950.

Nothing was ever paid by him to H. G. Marshall or H. G. Marshall, Inc., except the $1,000 expense money above named and Amos claims that since he and H. G. Marshall were joint adventurers from the beginning he is entitled to one-half of the overriding royalty given to Ida B. Marshall for no consideration in an effort to avoid giving him his just share of what he and H. G. Marshall had earned from Titus Haffa in handling the transaction for him. H. G. Marshall and Haffa and A & P Development Company are charged with fraudulent conduct in an effort to deprive Amos of his share of their earnings as joint adventurers.

The plaintiff in error first submits the following proposition:

"The settlement had between Soper and associates and A & P Development Company on October 18, 1950, whereby Soper and associates accepted $15,500 and made assignments of their leases reserving a 1/16th of 7/8ths override, constituted an accord and satisfaction and substitution of a new agreement in satisfaction of the former one, and the execution of the latter agreement terminated all rights of either party under the former."

There is no question but that prior to October 18, 1950, when a settlement was made between Soper and associates and A & P Development Company, there was a disagreement between these parties as to whether the requirements of their prior agreement of September 14, 1950, had been met by Soper and associates, who claimed that they had good title to 150 acres and were ready to deliver these leases to A & P Development Company, reserving a one-eighth of eight-eighths overriding royalty and that they were entitled to receive payment at $300 per acre for these leases from the $48,000 in escrow.

The A & P Development Company, through their attorney, contend that Soper

and associates did not have good title to the required minimum of 145 acres of leases.

This controversy was settled when Titus Haffa came to Oklahoma City and on October 18, 1950, Soper and associates agreed to accept $15,500 for approximately 124 acres of leases, reserving only one-sixteenth of seven-eighths overriding interest instead of the reservation of one-eighth of eight-eighths to be reserved under the prior agreement of September 14, 1950.

▇ "Accord and satisfaction" has been defined by this Court in numerous cases. In Finley & Lollar v. Dean, 184 Okl. 456, 88 P.2d 366, it was announced in the first paragraph of the syllabus as follows:

"An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is or considers himself entitled to; and a satisfaction is the execution of such agreement."

The plaintiff in error quotes from a statement of the plaintiff in a trial brief filed in the trial court as follows:

"In our judgment the true explanation is that Marshall called Haffa before the Soper transaction was consummated and explained to him that he had saved him a considerable sum of money and Haffa at that time thought the leases were valueless, and to show his appreciation to Marshall he agreed to give him an override, as testified to by Hazel Kolb."

The testimony of Hazel Kolb was stricken as to Ida B. Marshall. H. G. Marshall denied having made such a statement and Haffa denied that he ever made a statement over the telephone to Marshall that he was going to give Marshall or his wife an interest in the lease for services rendered by Marshall. Marshall testified that the telephone conversation with Haffa, which was testified about by Hazel Kolb

was merely a conversation to make certain that Haffa had wired certain money, which he had agreed to pay for the overriding royalty retained by Soper and associates when the agreement of October 18, 1950, was made, and which Haffa was undertaking to purchase. The evidence seems to support the claim of accord and satisfaction between the parties as shown by the agreement of October 18, 1950.

Plaintiff in error next contends that the judgment that a joint adventure and constructive trust existed between Amos and H. G. Marshall is clearly against the weight of the evidence. The early case of Hayden v. Dannenberg, 42 Okl. 776, 143 P. 859, is cited as an authority as to the quantum of evidence necessary to establish a constructive trust:

"A constructive trust may be established by parol evidence, but the law for the safety of titles requires that the proof should be of the most satisfactory and trustworthy kind. The onus of establishing a constructive trust rests upon him who seeks its enforcement; and, before a court of equity will be warranted in making a decree therefor, the evidence must be clear, unequivocal, and decisive."

In 26 R.C.L., Section 77, page 1231, it is said:

"* * * When the evidence is doubtful and not clear and satisfactory, or is capable of reasonable explanation on any theory other than that of the existence of an implied or resulting trust, such trust will not be held sufficiently established to entitle the beneficiary to a decree declaring and enforcing it. * * *"

▇ This Court said in Parsons v. Crawford, 193 Okl. 537, 145 P.2d 932, 935:

"A constructive trust may be established by parol evidence. * * *

"But the general rule is that a mere preponderance of the evidence is not sufficient to establish a constructive trust, but that it must be established

by evidence which is clear, definite, unequivocal and satisfactory, or such as to lead to but one conclusion, or as to leave no reasonable doubt as to the existence of the trust. 65 C.J. 493."

Numerous Oklahoma cases are cited in support of the above rule. It does seem very unusual that an experienced oil man like H. D. Amos apparently never made any effort to have any part of his claimed agreement with Marshall reduced to writing. His name appeared at no place in any of the written agreements mentioned. It is admitted by Marshall that in the letter agreement of September, 1950, whereby they were to receive $12.50 per acre for selling the leases, that the commission would have been participated in by Amos had this deal been consummated.

Amos and his son are the only witnesses who testified positively that a joint adventure was entered into between Amos and Marshall. An employee of British-American Oil Company testified that in October, 1950, Amos and Marshall came to his office and told him that they owned a lease off-setting a lease of British-American and wanted a farm-out of this lease or dry hole money if Amos and Marshall drilled an offset well. There is no evidence that Amos and Marshall ever owned the lease or leases here mentioned.

The defendant Marshall testified that the only interest Amos ever had in the transactions above mentioned was to share in the $12.50 per acre had the original transaction of September 5, 1950, been consummated.

The plaintiff Amos alleges that Mr. and Mrs. Marshall and Haffa conspired to defraud him by conveying overriding royalty to Ida B. Marshall. In Davis v. Howe, 99 Okl. 118, 226 P. 316, this Court held as follows:

"Where fraud is charged, it becomes a question of fact and must be proved by the party alleging the fraud, and cannot be inferred from facts which may be consistent with honesty of purpose.

"Fraud is never presumed, but must be proved by clear and satisfactory evidence, and when a transaction is fairly susceptible of two constructions, the one which will free it from the imputation of fraud will be adopted."

In Brotherhood of Railroad Trainmen v. Brown, 180 Okl. 489, 71 P.2d.742, 743, it is said:

"As a rule, fraud is never presumed. * * *

"We have said that the proof must be clear, cogent, convincing, positive, and satisfactory. * * *

"We have said that the evidence of fraud must preponderate to the degree of overcoming all opposing evidence and repelling all presumptions of good faith. * * *

"Where a transaction is fairly susceptible of two constructions, the one which will free it of the imputation of fraud will be adopted. * * * Likewise, where fraud is alleged, it must be proved and cannot be inferred from facts consistent with honesty of purpose. * * *" (Citation of authorities omitted.)

When we consider all of the evidence and circumstances surrounding the various transactions involved, we are convinced that the evidence necessary to establish a constructive trust through fraud falls far short of that required to establish fraud on which a constructive trust may be based.

It is next submitted that after the settlement of October 18, 1950, Haffa or A & P Development Company owned the leases assigned, subject only to a one-sixteenth of seven-eighths override reserved by Soper and associates, and was not under any obligation to Marshall or any other person but had a perfect right to dispose of his interest by gift or otherwise.

As said in Jewell v. Allen, 188 Okl. 374, 109 P.2d 235, fraud cannot be predicated upon an act which a party had a right by law to do. Surely Ida B. Mar-

shall had a perfect right to accept a gift from Titus Haffa. The fact that she was married did not affect such right. 32 O.S. 1951, § 15 and Farmers' State Bank of Ada v. Keen, 66 Okl. 62, 167 P. 207.

It is true that the trial court found that the interest given by Haffa to Ida B. Marshall and accepted by H. G. Marshall in the name of his wife was with the express intent and purpose of defrauding the plaintiff, Amos, and depriving him of his one-half interest therein. We find no evidence to support this finding.

It is argued that if there was a joint adventure between Amos and H. G. Marshall under the judgment rendered Amos would receive an interest far in excess of the interest he would have received under the original agreement with Soper and associates, if such had been consummated. Under the agreement of September 14, 1950, between Soper and associates and A & P Development Company, Soper was to reserve one-eighth of eight-eighths overriding royalty had this deal been consummated. When this transaction was abandoned and the new deal of October 18, 1950, was substituted, Soper and associates agreed to accept $15,500 in cash and to reserve only one-sixteenth of seven-eighths overriding royalty. Under the judgment of the trial court, Amos is given one-half of one-eighth of eight-eighths overriding royalty which is far in excess of that he would have received had the September 14, 1950, deal been consummated.

H. D. Amos calls attention to the two releases executed by H. G. Marshall and H. G. Marshall, Inc., September 11, 1950, and demanded by Haffa. The releases cover any compensation for services rendered but do not release any claim or right to overriding royalty. It is clear that these releases and the reservation in the last paragraph referred to the contracts of H. G. Marshall and H. G. Marshall, Inc., with Soper and associates, and so recite. The reservation of any claim or right to overriding royalty is clearly not intended to cover any claim except against Soper and associates and that agreement was never consummated.

■ This being a case of equitable cognizance it is the duty of this Court to consider and weigh all of the evidence. This we have done. The evidence is too voluminous to repeat here. It does seem unnatural that Titus Haffa would make a present to H. G. Marshall's wife of overriding royalty which was paying her around $2,400 per month at the time of the trial. But it should be remembered that no well had been drilled when the gift was made and the prospects for production were poor after an offset dry hole had been drilled.

It should further be noticed that the undisputed evidence shows that previous to this gift to Ida B. Marshall, Titus Haffa had given her a Cadillac sedan in 1947 and another Cadillac in 1951, and had also made her gifts in cash. He had visited and had meals in the Marshall home and spent the night there, and the Marshalls had visited in his home in Chicago. The record disclosed that Titus Haffa was a very unusual man of means and that his generosity apparently knew no bounds.

The evidence of fraud sufficient to support a constructive trust falls far short of the standards set by numerous decisions of this Court. There is no evidence that H. G. Marshall has ever acquired any interest in or exercised any control in the interest conveyed to his wife except in doing those things for her that would be expected by a husband for a wife inexperienced in business affairs. We think the judgment of the trial court is against the clear weight of the evidence and is hereby reversed with instructions to render judgment for the defendants. Ida B. Marshall, H. G. Marshall, and H. G. Marshall, Inc.

JOHNSON, C. J., and WELCH, CORN and BLACKBIRD, JJ., concur.

WILLIAMS, V. C. J., and DAVISON, JACKSON and HUNT, JJ., dissent.